IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KEITH BARTHEL and DOROTHY BARTHEL, | ) ) ) | |
| Plaintiffs, | ) ) | 4:96CV3034 |
| v. | ) ) | |
| DANIEL GLICKMAN, SECRETARY UNITED STATES DEPARTMENT OF AGRICULTURE, | ) ) ) ) | MEMORANDUM OPINION |
| Defendant. | ) ) | |

This matter is before the Court on plaintiffs' motion for an order to show cause/writ of mandamus (Filing No. 77). Plaintiffs contend that the government should be adjudged to be in civil contempt for violating the Court's March 29, 2000, Order, which remanded this case to the National Appeals Division ("NAD") and the Natural Resources Conservation Service ("NRCS") of the U.S. Department of Agriculture ("USDA" or "the agency") for compliance with the Eighth Circuit Court of Appeal's ruling in this case. Plaintiffs also seek a writ of mandamus, pursuant to 28 U.S.C. § 1361, to compel the government to comply with the Swampbuster provisions in the Food Security Act, 16 U.S.C. §§ 3821-24, and the Court's March 29, 2000, Order. Having reviewed the parties' briefs, evidentiary submissions, and the applicable law, the Court finds that plaintiffs' motion should be denied.

**BACKGROUND**

This proceeding concerns a portion of the South Fork of the Elkhorn River that was straightened in 1916 to improve drainage. The straightened portion, referred to throughout these proceedings as "the ditch," runs along the south side of the plaintiffs' 450-acre hay meadow ("the meadow" or "the site"), which was purchased by the plaintiffs in 1957. The ditch also runs on adjacent property owned by Gene and Erma Liermann ("the Liermanns") whose property is downstream from the plaintiffs' meadow. The ditch enhances the natural drainage of the plaintiffs' meadow and allows them to raise hay which they use to feed dairy cattle. The ditch was dredged in 1951 and again in 1983 to clean out obstructions and silting that had occurred through the passage of time and caused water to backup. In 1984, the county replaced a culvert under a county road where it crosses over the ditch. Sometime in 1986, the county lowered the culvert by approximately eighteen inches. In the interim, on December 23, 1985, the Food Security Act ("the Act") became effective. The Act contains federal Swampbuster provisions designed to preserve wetlands.

In 1987, the ditch had again become obstructed with debris and clutter, allegedly caused by the Liermanns' cattle crossing the ditch. After the Liermanns refused to allow dredging of the portion of the ditch on their property, the

-2-

plaintiffs filed suit against the Liermanns in Nebraska state court, seeking an order compelling the Liermanns to dredge the ditch.  The Nebraska state court issued a mandatory injunction requiring the Liermanns to hire a licensed surveyor to determine "a grade or level to which the ditch shall be excavated so that water will flow."  The order further provided that the "grade shall be at or below the level of the bottom of the culvert installed by Holt County in the county road in 1988 located at station 22 of the Dearmont Survey."  Because dredging of the ditch impacted a potential wetland area, the USDA, which is the agency responsible for enforcing the Swampbuster provisions, became involved.  Initially, the USDA determined that the dredging ordered by the Nebraska state court order did not violate the Swampbuster provisions.  After the Liermanns appealed, however, the USDA reversed itself, finding that dredging could not exceed eighteen inches above the bottom of the culvert that had been lowered by the county in 1986.  Plaintiffs, whose hay meadow was flooded at that dredging level, exhausted their administrative appeals and then brought suit pursuant to 7 U.S.C. § 6999.[1]  This Court affirmed the USDA's decision and plaintiffs appealed.

---

[1] Title 7, U.S.C. § 6999 (1999), provides that "[a] final determination of the [National Appeals] Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter of Title 5."

-3-

On appeal, the USDA argued that the level of the culvert on or before December 23, 1985, the effective date of the Swampbuster provisions, was eighteen inches higher than its current level and as a result the ditch can only be maintained at that level. *Barthel v. United States Dep't of Agric.*, 181 F.3d 934, 937 (8th Cir. 1999).  The Eighth Circuit disagreed, stating,

> The unambiguous focus of the statute and implementing regulations is to maintain the status quo of the manipulated wetlands -- not the drainage ditch . . . [A] technical determination that establishes the level of the level of a culvert in a ditch, but which produces a result contrary to the previous status quo of the wetlands cannot stand.  The statute and regulations mandate that the Barthels should be able to have the water and farming regime they had before December 23, 1985.

*Id*. at 938.  The Circuit went on to note, however, that "[t]his does not mean that the Barthels get the same use of their land no matter the circumstances.  For example, if there is high water from unusual amounts of rain, the Barthels cannot automatically dig the ditch deeper.  They cannot exceed the original scope and effect." *Id*. at n. 7.  The Eighth Circuit then reversed and remanded "with instructions that the case be remanded to the agency for a hearing and determination of the wetland characteristics and associated use of the Barthels' 450-acre hay meadow, prior to December 23, 1985, and the necessary dredging

-4-

and cleaning of the ditch to accomplish that water and farming regime." *Id*. at 939.

On March 29, 2000, this Court entered an order remanding the case to the USDA's National Appeals Division ("NAD") with instructions that the NAD further remand the case to the Natural Resources Conservation Service ("NRCS") to make technical determinations consistent with the judgment of the Court of Appeals for the Eighth Circuit (Filing No. 35).

The NRCS investigated the site from November 15-18, 1999, to ascertain the level to which the ditch could be maintained.  The NRCS used a backhoe to collect samples of soil strata which were analyzed by technical specialists, including an agricultural engineer, a resource conservationist, a geologist, a civil engineer, and a soil scientist, to determine the greatest depths to which the ditch was dredged historically (Filing No. 79, Ex. 3, Attach. Parts 1 & 2).  Based on this investigation, the NRCS issued a preliminary technical determination on May 25, 2000, concluding that the ditch could be maintained with an 8-foot bottom at specified elevations, which represented the lowest points at which the ditch has been historically modified, constructed, or cleaned out (*Id*., Ex. 3, Attach. Part 2).  In the preliminary technical determination, the NRCS notified plaintiffs of their right to request a field visit to review the bases for the determination (*Id*.).  The plaintiffs subsequently requested a

-5-

field visit, which was conducted on August 21, 2000 (*Id.*, Attach. Parts 1 & 2).  At that time, NRCS explained how the scope and effect determination was made and also notified the plaintiffs that they had until September 6, 2000, to submit additional evidence relating to the preliminary determination.  Plaintiffs were also notified that a final technical determination would issue within thirty (30) days after the field visit and that the final technical determination could be appealed to the Farm Service Agency County Committee ("FSACC") within thirty (30) days after the final technical determination was issued (*Id.*).

Approximately seven days after the field visit, on August 28, 2000, plaintiffs filed a motion to show cause with the Court, alleging that the NRCS had failed to determine the plaintiffs' pre-1985 water and farming regime and thus had failed comply with the Eighth Circuit's decision in this case (Filing No. 36).  To resolve the show cause order, the parties, on September 28, 2000, entered into an agreement wherein the USDA, at plaintiffs' request, agreed to retain hydrologist Dr. Wayne Skaggs to analyze the hydrology of plaintiffs' hay meadow and determine the best method for determining plaintiffs' pre-1985 water and farming regime (Filing No. 79, Ex. 3, Attach. Parts 1 & 2).  On October 21, 2000, Dr. Skaggs traveled to plaintiffs' property to review the site.  Dr. Skaggs released his report on November 8, 2000, in which he opined that the best approach in

-6-

making the scope and effect determination was to determine the maximum historical depth of the drainage ditch based on an analysis of the sediments (Filing No. 80, Ex. 10). Dr. Skaggs further concluded that "[t]he historical scope and effect of drainage on the meadow will result if the outlet and field ditches are returned to these maximum depths and cross sections." (*Id.*).

After reading Dr. Skaggs' report, the NRCS concluded that its findings in the preliminary scope and effect determination, which were based on analysis of the sediments in the bottom of the ditch, were accurate to return plaintiffs' meadow to pre-1985 conditions (Filing No. 79, Ex. 3, Attach. Parts 1 & 2). Consequently, on July 17, 2001, the NRCS adopted the preliminary determination as its final technical determination. At that time, the NRCS notified plaintiffs that they had the right to appeal the final technical determination to the FSACC within thirty (30) days (*Id.*).

Plaintiffs thereafter timely appealed the final technical determination to the FSACC (Filing No. 80, Ex. 7). In their appeal, plaintiffs contended that the NRCS' final determination was erroneous because it only related to dredging level of the ditch and did not take the pre-1985 production levels of the pasture into consideration (*Id.*). On August 28, 2001, before the FSACC had held a hearing on plaintiffs' appeal,

-7-

plaintiffs filed a motion for a preliminary and permanent
injunction, alleging that the NRCS had failed to comply with the
Eighth Circuit's decision and the Court's March 29, 2000, order
(Filing No. 45).  While plaintiffs' motion was pending, the FSACC
held a hearing on plaintiffs' appeal and issued a letter, which
concluded that the plaintiffs' appeal had merit and directed the
NRCS State Conservationist, Mr. Stephen Chick, to review the
final technical determination (Filing No. 80, Ex. 9).  The FSACC
also requested that plaintiffs provide Mr. Chick with:  (1) all
production records for the plaintiffs' hay meadow; (2) any
documentation of actions (such as fertilization) the plaintiffs
did to affect production of the hay meadow; (3) any other
information plaintiffs had regarding anything that may have
affected production of the hay meadow; and (4) all survey records
for the main ditch and each of the field drains related to
plaintiffs' hay meadow (*Id.*).

In conducting his review of the final technical
determination, Mr. Chick reviewed the following information:
(1) production data provided by the plaintiffs for the
plaintiffs' ten best pre-1985 hay production and grazing years
for the hay meadow; (2) relevant records from the state court
proceedings, including testimony by the plaintiffs relating to
hay production and the Dearmont Survey referenced in the state
court opinion; and (3) available rainfall data for each available

-8-

hay production year (Filing No. 79, Ex. 3, Attach. Part 1).
Based on this information, Mr. Chick evaluated the water and
farming regime that existed prior to December 23, 1985, and
compared it to the water and farming regime after that date, to
determine the manipulation needed to maintain the historical
water and farming regime.  Mr. Chick also evaluated the hay
production data provided by the plaintiffs as it relates to
average precipitation each year and ditch clean out.  As a result
of this evaluation, Mr. Chick concluded that the pre-1985 highest
hay yields are attributable to either low years of precipitation
or ditch clean out and that the years following internal or
external ditch clean out tend to show a gradual reduction in
yield (*Id.*).  Mr. Chick also analyzed the Dearmont Survey, which
the Nebraska state court referenced in its decision, and compared
it to the ditch analysis done by NRCS to determine if there were
any discrepancies in the ditch depth allowed by NRCS and the
depth ordered by the Nebraska state court.  With the exception of
one station on the NRCS' survey, NRCS determined that the depths
of the ditch allowed by NRCS are at or below the depths ordered
in the state court decision.  The NRCS also determined that the
one station in the NRCS' determination that was above the depth
allowed in the state court order could be lowered without
adversely affecting wetland functions (*Id.*).  Based on these
evaluations, Mr. Chick made three amendments to the final

-9-

technical determination:  (1) permitting dredging pursuant to the levels ordered in the state court decision; (2) permitting plaintiffs to maintain the internal ditches on their meadow as they have done in the past; and (3) noting that the NRCS had no objection to the county installing a bridge to replace the culvert (*Id.*).

On December 4, 2001, the FSACC notified plaintiffs that it was adopting the revised final technical determination as the USDA's final decision (Filing No. 81, Ex. 12).  In its notice, the FSACC notified plaintiffs of their right to appeal the decision to the NAD within thirty (30) days.  Plaintiffs never filed an appeal (Filing No. 90).

On July 30, 2002, after holding an evidentiary hearing on September 5, 2001, the Court denied plaintiffs' motion for a preliminary and permanent injunction.[2]  (Filing No. 60).  The Court found that plaintiffs' motion for injunctive relief was, in substance, a challenge to the NRCS' technical determinations and concluded that plaintiffs' motion should be denied because plaintiffs failed to exhaust their administrative remedies before seeking judicial review of the USDA's determination (*Id.*).  The Court also entered an order dismissing plaintiffs' complaint

_____

[2] At the September 5, 2001, hearing on plaintiffs' motion for a preliminary and permanent injunction, the parties notified the Court that the plaintiffs were scheduled to appear before the FSACC to appeal the NRCS' July 17, 2001, decision.  The Court reserved ruling on the plaintiffs' motion until a copy of the proceedings before the FSACC was supplied to the Court.

(Filing No. 61).  The plaintiffs appealed the July 2002 Order, but withdrew their appeal on December 3, 2002, after the government allegedly told plaintiffs that it would comply with the Eighth Circuit's decision and help the plaintiffs reach a workable solution (Filing No. 80, Ex. 4).

On January 6, 2003, plaintiffs sent a letter to the USDA, asking it to consider a proposal drafted by Donald D. Etler, for the dredging of the ditch (Filing No. 81, Ex. 14). The USDA responded in February of 2003, reiterating that plaintiffs could dredge the ditch at the levels ordered in the state court decision and that the plaintiffs were authorized to maintain their internal ditches as they had done in the past (Filing No. 81, Ex. 15).  In November 2003, plaintiffs sent the USDA a second letter urging them to permit dredging of the ditch pursuant to Mr. Etler's proposal (Filing No. 81, Ex. 16, Attach. C).  On December 15, 2003, the USDA sent plaintiffs a letter stating (1) that the revised technical determination dated November 6, 2001, was the final determination regarding the depth to which the ditch could be dredged; (2) that no new circumstances had arisen to justify revising the final decision; (3) that Mr. Etler's proposal is inconsistent with the revised final technical determination; and (4) that plaintiffs could maintain their internal ditches in the manner they had done in the past (Filing No. 81, Ex. 16, Attach. A).

-11-

On January 12, 2004, plaintiffs sought NAD review of the NRCS' December 16, 2003, letter, claiming that the "NRCS ignored the finding of the Nebraska court and has only reviewed the outlet ditch issue without taking into consideration the production levels of the meadow." (Filing No. 81, Ex. 16). Plaintiffs requested the NAD to find that Mr. Etler's proposal satisfies the Eighth Circuit's order (*Id*.). On January 30, 2004, the NAD denied the plaintiffs request on the ground that it was an untimely attempt to challenge the administrative determination made in 2001 and that the NRCS' letter dated December 16, 2003, was an informative/advisory letter, not an adverse appealable decision (Filing No. 81, Ex. 17).

Approximately two years later, on December 29, 2005, plaintiffs filed the instant motion seeking to compel the government to comply with the Eighth Circuit's decision in this case (Filing No. 77). Plaintiffs claim that their meadow has been under two feet of water on several occasions since the revised technical determination was issued, including June 28, 2002, July 17, 2002, July 9, 2004, July 13, 2005, August 8, 2005, and August 30, 2005, and that they have been unable to return to their historical water and farming regime (Filing No. 78, ¶ 7). Plaintiffs seek an order requiring the government to show cause why the government should not be adjudged to be in civil contempt for violating the Court's March 29, 2000, Order. Plaintiffs also

-12-

seek a writ of mandamus compelling the officers and employees of the NRCS, NAD, and/or USDA to approve maintenance of the ditches in accordance with Mr. Etler's May 1, 2003, proposal (*Id.* at ¶ 11).  The government opposes plaintiffs' motion, arguing, inter alia, (1) that plaintiffs failure to exhaust their administrative remedies bars their current challenge to the revised final technical determination; and (2) that plaintiffs have not made a sufficient showing to justify relief under Fed. R. Civ. P. 70 or the mandamus statute, 28 U.S.C. § 1361.[3]

### DISCUSSION

**A.   Exhausting Administrative Remedies**

The government contends that plaintiffs' motion should be denied because plaintiffs did not appeal the FSACC's December 4, 2001, notice adopting the revised final technical determination as the agency's final decision and thus failed to exhaust their administrative remedies, as required by 7 U.S.C. § 6912(e).[4]  In response, plaintiffs do not dispute that they

---

[3] Initially, the government also argued that the Court lacked jurisdiction over this case pursuant to 7 U.S.C. § 6912(e) because plaintiffs failed to exhaust their administrative remedies.  The government later abandoned that argument in light of the Eighth Circuit's recent opinion in *Ace Prop. & Cas. Ins. Co. v. Fed Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006), wherein the Eighth Circuit held that section 6912(e) is not jurisdictional.  (*See* Govt.'s March 24, 2006 letter to the Court).

[4] Title 7, U.S.C. § 6912(e) provides, in relevant part:

> [A] person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action in a court of competent jurisdiction against (1) the Secretary; (2) the Department [of

-13-

failed to exhaust their administrative remedies, but argue that their failure to exhaust should be excused because pursuing administrative remedies would have been futile and caused irreparable harm.

A party may be excused from exhausting administrative remedies if the complaint involves a legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative procedures would be futile, or if the issues to be decided are primarily legal rather than factual. *Ace Prop. & Cas. Ins. Co. v. Fed Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006). The burden of demonstrating an exception from the exhaustion requirement falls on the party seeking to avoid the requirement. *See D.C. v. Hamamoto*, 2004 WL 1043114 at *2 (9th Cir. May 7, 2004); *Donoho ex rel. Kemp v. Smith County Bd. of Educ.*, 2001 WL 1299023 at *3 (6th Cir. Aug. 9, 2001); *Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir. 2000). The Court will address the plaintiffs' futility and irreparable harm arguments in turn.

### 1.   Futility

An administrative remedy will be deemed futile if there is doubt about whether the administrative body could grant effective relief or if the administrative body is shown to be

---

Agriculture]; or (3) an agency, office, officer, or employee of the Department.

7 U.S.C. §§ 6912(e), 6902 (1999).

-14-

biased or has otherwise predetermined the issue before it. *See McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992). Plaintiffs claim they fall within the futility exception because the agency has continually refused to comply with the Eighth Circuit's decision in this case. Thus, plaintiffs essentially argue that appealing the revised final technical determination to the NAD would have been futile because the agency had predetermined that it would not comply with the Eighth Circuit's decision in this matter. Plaintiffs futility argument, however, is not supported by the administrative record.

While the administrative proceedings in this matter have no doubt been complex and lengthy, there is no evidence supporting a conclusion that the agency had somehow predetermined the outcome of the plaintiffs' case. To the contrary, the administrative record establishes that the agency invested significant resources to investigate the plaintiffs' pre-1985 water and farming regime to ensure compliance with the Eighth Circuit's decision. Several facts in the administrative record support this conclusion. First, following remand, the agency conducted a thorough three-day on site investigation at plaintiffs' property performing sediment analyses with a team of technical specialists, including an agricultural engineer, a resource conservationist, a geologist, a civil engineer, and a soil scientist, to determine the historical depths of the ditch.

-15-

Second, the agency retained hydrologist Dr. Skaggs to obtain an independent opinion on the best methodology to use in determining plaintiffs pre-1985 water and farming regime.  Significantly, Dr. Skaggs' independent, on site, investigation confirmed that sedimentary analysis methodology used by the NRCS in its investigation, was the best methodology to restore plaintiffs' property to its pre-1985 water and farming regime.  Third, after the FSACC determined that plaintiffs' appeal had merit, the NRCS revisited its final technical determination and conducted an extensive evaluation of available hay production data for the meadow as it relates to ditch clean out.  After conducting these assessments, the NRCS concluded that the dredging depths set forth in the final technical determination, with the one exception discussed *infra*, allowed plaintiffs to maintain their pre-1985 water and farming regime.  These facts lead the Court to conclude that the agency's goal was to ensure, throughout all phases of the investigation process, that its decision would comply with the Eighth Circuit's ruling in this case.

Plaintiffs' futility argument is also undermined by the fact that plaintiffs were successful in the one appeal they pursued with the agency.  The fact that the FSACC determined that plaintiffs' appeal of the final technical determination had merit severely undercuts plaintiffs' argument that an appeal of the revised final technical determination to the NAD would have been

-16-

pre-determined and futile.  For these reasons, the Court finds that plaintiffs have failed to sustain their burden of proving that they fall within the futility exception to the administrative exhaustion doctrine.

### 2.   Irreparable Harm

Next, plaintiffs contend that they should be excused from pursuing further administrative remedies because their hay meadow is still under water and any further time spent exhausting their administrative remedies would continue to cause them irreparable harm.  This argument lacks merit.  The relevant time frame for determining whether the irreparable harm exception applies is at the time administrative remedies should have been exhausted.  *See Winck v. England*, 327 F.3d 1296, 1305 (11th Cir. 2003).  Thus, to fall within the irreparable harm exception to the exhaustion requirement, the plaintiffs must demonstrate that they were suffering irreparable harm at the time they failed to appeal the revised final technical determination.  Plaintiffs' argument that they should be excused from pursuing further administrative remedies because their hay meadow is still under water, therefore, is insufficient to satisfy the irreparable harm exception.  Rather, plaintiffs must come forward with evidence establishing that they were suffering irreparable harm in November and December of 2001, the time in which plaintiffs should have appealed the revised final technical determination to

-17-

the NAD.  However, by plaintiffs' own admission, the hay meadow was not under water in November or December of 2001 (*See* Pl. Br. ¶ 7).  Because plaintiffs' meadow was not flooded at the time they failed to exhaust their administrative remedies and because there is no other evidence in the record supporting a finding of irreparable harm, the Court finds that plaintiffs do not fall within the irreparable harm exception to the exhaustion requirement.

**B.  Relief under Fed. R. Civ. P. 70**

Plaintiffs also argue, albeit very briefly, that they is entitled to relief under Fed. R. Civ. P. 70 because the agency has failed to comply with the Court's March 29, 2000, Order remanding the case to the NAD and the NRCS to make technical determinations consistent with the Eighth Circuit's opinion in this case.  This argument is also without merit.

Rule 70 of the Federal Rules of Civil Procedure provides, in relevant part:

> If a judgment directs a party to execute a conveyance of land or . . . to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.  On application of the party entitled to performance, the clerk shall issue a writ of attachment or

-18-

> sequestration against the property
> of the disobedient party to compel
> obedience to the judgment. The
> court may also in proper cases
> adjudge the party in contempt.

Plaintiffs are not entitled to relief under Rule 70 because the USDA has complied with the Eighth Circuit's ruling in this case. The Eighth Circuit ordered that plaintiffs' case be remanded to the district court "with instructions that the case be remanded to the agency for a hearing and determination of the wetland characteristics and associated use of the Barthels' 450-acre hay meadow, prior to December 23, 1985, and the necessary dredging and cleaning of the ditch to accomplish that water and farming regime." *Barthel*, 181 F.3d at 939. Following remand, the agency conducted an extensive investigation to determine plaintiffs pre-1985 water and farming regime. The agency performed sedimentary analyses to determine the historical dredging depths of the ditch and also evaluated all available hay production data for the meadow. The agency gave the plaintiffs opportunities to submit additional evidence and provided plaintiffs with notice of their right to appeal each of the agency's determinations. When plaintiffs failed to appeal the revised final technical determination, the findings in that determination became the agency's final decision on the matter. Plaintiffs, in seeking Rule 70 relief, are now essentially attempting to appeal the findings made in the revised final technical determination, which

-19-

plaintiffs should have appealed in late 2001 or early 2002. Plaintiffs, however, are not entitled to relief under Rule 70 because the USDA had complied with the Eighth Circuit's order. Accordingly, plaintiffs' motion for relief under Rule 70 will be denied.

### C.  Relief under the Mandamus Statute

Finally, plaintiffs request that the Court issue a writ of mandamus, pursuant to 28 U.S.C. § 1361, compelling the officers and employees of the NRCS, the NAD, and/or the USDA to comply with the Swampbuster Act and the Court's March 29, 2000, Order.  Specifically, plaintiffs request that the Court order the NRCS to approve maintenance of the plaintiffs' ditches in accordance with Mr. Etler's May 1, 2003, proposal

Mandamus jurisdiction in federal district courts is governed by 28 U.S.C. § 1361, which provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  The issuance of a writ of mandamus is an extraordinary remedy reserved for extraordinary situations, *In re MidAmerican Energy Co.*, 286 F.3d 483, 486 (8th Cir. 2002), and is only intended to provide a remedy if the plaintiff has exhausted all other avenues of relief and the defendant owes the plaintiff a clear nondiscretionary duty.  *Heckler v. Ringer*, 466 U.S. 602,

-20-

616-17 (1984).   A court lacks jurisdiction to issue a writ of mandamus "unless the plaintiff colorably demonstrates either that he has exhausted all other avenues of relief, or that further exhaustion should be excused." *Willis v. Sullivan*, 931 F.2d 390, 395-96 (6th Cir. 1991) (citing *Slone v. Secretary of Health and Human Serv.*, 825 F.2d 1081, 1083 (6th Cir.1987)).

Because the plaintiffs failed to exhaust their administrative remedies or establish that exhaustion was excused, the Court finds that it lacks jurisdiction to issue a writ of mandamus under 28 U.S.C. § 1361.

### D.  Replacement of the Existing Culvert with a Bridge

Plaintiffs have also requested that the Court advise Holt County, Nebraska, which has expressed hesitation in replacing the existing culvert with a bridge without a court order, (*see* Filing No. 81, Ex. 18), that installation of a bridge to replace the existing culvert is permissible.   The USDA has expressly stated that it has no objection to the County installing a bridge to replace the culvert (Filing No. 79-6). Moreover, the County has also stated that it has no objections to replacing the culvert with a bridge (Filing No. 81, Ex. 18, ¶ 4). Therefore, the Court finds that the County is authorized to replace the culvert with a bridge.

**CONCLUSION**

In sum, the Court finds (1) that plaintiffs do not fall within the futility or irreparable harm exceptions to the administrative exhaustion requirement; (2) that plaintiffs are not entitled to relief pursuant to Fed. R. Civ. P. 70; (3) that the Court lacks mandamus jurisdiction because plaintiffs failed to exhaust their administrative remedies or establish that exhaustion was excused; and (4) that the County has the Court's permission to replace the existing culvert with a bridge.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 23rd day of June, 2006.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

-22-